**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **BILL GOODWIN CONSTRUCTION, LLC,** | : | No. 3:13cv157 |
| **Plaintiff** | : | (Judge Munley) |
| | : | |
| **v.** | : | |
| | : | |
| **WONDRA CONSTRUCTION, INC.; RENEWABLE ENERGY SYSTEMS AMERICAS, INC.; RENEWABLE CONSTRUCTION; RES AMERICAN CONSTRUCTION COMPANY, INC.; MEHOOPANY WIND ENERGY, LLC; BP WIND ENERGY NORTH AMERICA, INC.; SEMPRA U.S. GAS & POWER; ZURICH AMERICAN INSURANCE COMPANY and FIDELITY & DEPOSIT COMPANY OF MARYLAND,** | : | |
| **Defendants** | : | |

## MEMORANDUM

Before the court are defendants' motions to dismiss (Docs. 56, 58 & 62) and strike (Docs. 54, 59) pursuant to Federal Rules of Civil Procedure 12.[1] The motions are fully briefed and ripe for disposition.

## Background

This case arises from a dispute over oral construction contracts

---

[1] The court denied Zurich and Fidelity's motion to dismiss plaintiff's complaint in a previous memorandum and order. (See Doc. 36, Mem. & Order dated Aug. 5, 2013). As such, any reference to "defendants" within this memorandum shall exclude Zurich and Fidelity.

pertaining to the construction of a wind farm (hereinafter the "Mehoopany

Windmill Project" or "project") in Wyoming County, Pennsylvania.  Defendants

BP Wind Energy North America, Inc. (hereinafter "BP"), Mehoopany Wind

Energy, LLC (hereinafter "Mehoopany Wind Energy") and Sempra U.S. Gas &

Power (hereinafter "Sempra") were partners in a joint venture to construct the

Mehoopany Windmill Project.  (Doc. 48, Am. Compl. (hereinafter "Am.

Compl.") ¶¶ 3, 5, 11).  These partners hired Defendants Renewable Energy

Systems Americas Inc. and RES America Construction Inc. (collectively

"RES") to act as the general contractor.  (Id. ¶ 12).  RES, in turn, hired

Defendant Wondra Construction, Inc. (hereinafter "Wondra") as a

subcontractor.  (Id. ¶ 13).  Finally, Wondra hired Plaintiff Bill Goodwin

Construction, LLC (hereinafter "plaintiff") as its subcontractor.  (Id. ¶ 14).

**Oral agreement between plaintiff and Wondra**

In November 2011, Wondra entered into an oral agreement with

plaintiff, which required plaintiff to deliver stone and other material in addition

to providing equipment and services for the construction of roadways for the

project.  (Id. ¶¶ 14-15).  Subsequent to this agreement, plaintiff hired its own

subcontractors to assist in the delivery of stone and other material.  (Id. ¶ 15).

Under the terms of this oral agreement, Wondra agreed to pay plaintiff

2

ten dollars and fifty cents ($10.50) for each ton of material delivered. (Id. ¶ 16). Plaintiff avers that this tonnage price covered the actual cost of material, valued at five dollars and fifty cents ($5.50) a ton, and the hauling/delivery costs of five dollars ($5.00) per ton. (Id. ¶ 17). This oral agreement **did not** include the hourly truck time for use of plaintiff's trucks.

**Safety meeting**

During the first month of the oral agreement, plaintiff met with representatives of BP, Mehoopany Wind Energy and Wondra. (Id. ¶ 18). At this meeting, Michael Kelly, BP Safety Engineer, discovered that Wondra was only paying plaintiff by the ton. (Id.) Plaintiff claims that Kelly, on behalf of BP, demanded that plaintiff and all other delivery trucks be **paid by the hour** in addition to material by the ton. (Id. ¶¶ 19, 21) (emphasis added). Specifically, Kelly stated that "if this condition was not met, plaintiff and the other delivery trucks would not be able to haul on the job." (Id. ¶ 20). Evidently, Kelly was concerned that if the haulers were only paid by the ton, they would have an incentive to travel as quickly as possible between hauls, which could create safety hazards. (Id. ¶ 22). Additionally, Kelly demanded this change to comply with BP and Mehoopany Wind Energy's internal procedures. (Id. ¶ 23).

**Oral modification of plaintiff's oral agreement with Wondra**

Subsequent to this meeting, plaintiff and Wondra agreed to modify their initial oral agreement.  (Id. ¶ 24).  Wondra agreed to pay plaintiff by the ton **as well as by the hour** so as to ensure the continued safety of all parties involved in the project.  (Id. ¶ 25) (emphasis added).  In exchange for slower and safer hauling, Wondra agreed and promised that it would pay plaintiff five dollars ($5.00) to seven dollars ($7.00) per ton and seventy-five dollars ($75.00) to ninety dollars ($90.00) an hour for truck time.  (Id. ¶¶ 25-26).

Plaintiff, in turn, modified the payment arrangements with its subcontractors.  Specifically, plaintiff made arrangements to pay its subcontractors an hourly rate between seventy-five dollars ($75.00) and ninety dollars ($90.00).  (Id. ¶ 28).  Plaintiff's subcontractors, however, would no longer receive a tonnage rate in addition to truck time.  (Id.)

Plaintiff performed its duties pursuant to the oral agreement and oral modification and submitted invoices to Wondra in June and July 2012.  (Id. ¶¶ 30-31).  Plaintiff alleges Wondra failed to remit full and complete payment even though RES and/or BP, Mehoopany Wind Energy and Sempra paid Wondra.  (Id. ¶¶ 34, 36).  Plaintiff claims the unpaid invoices amount to $1,911,382.91.  (Id. ¶ 35).

**Oral agreement between plaintiff and RES**

Plaintiff also claims that it entered into a separate and distinct oral agreement with RES in June 2012. (Id. ¶ 37). Specifically, RES agreed and promised to pay plaintiff to provide both the necessary stone material and deliver this material for the completion of the roadways within the project. (Id. ¶¶ 37-38). This stone material was in addition to and separate from the work and materials plaintiff was to provide pursuant to plaintiff's oral agreement and oral modification with Wondra. (Id. ¶ 40).

RES agreed to pay plaintiff ten dollars and fifty cents ($10.50) for each ton of stone material delivered and plaintiff's drivers eighty dollars ($80.00) an hour for any downtime experienced while on the project site. (Id. ¶ 37). Plaintiff provided $115,705.63 in materials and services for the project at the direction and request of RES. (Id. ¶ 41). RES accepted plaintiff's materials and services. (Id. ¶ 42). BP, Mehoopany Wind Energy and Sempra have paid RES for work related to the project. (Id. ¶ 46). RES, however, has refused to pay plaintiff. (Id. ¶¶ 43-44).

**Procedural history**

Based upon these facts, plaintiff filed an eight-count complaint asserting several causes of action. On August 5, 2013, the court allowed only plaintiff's

breach of contract claim to proceed against Defendants Zurich and Fidelity.

(Doc. 36, Mem. & Order dated Aug. 5, 2013).  The court dismissed all

remaining counts and allowed plaintiff to file an amended complaint.  (Id.)

After two (2) court approved 30-day extensions, plaintiff filed a timely

amended complaint on October 11, 2013.  Plaintiff's amended complaint

asserts the following causes of action: Count One, breach of contract against

Wondra; Count Two breach of contract against RES; Count Three,

promissory estoppel against Wondra; Count Four, promissory estoppel

against RES; Count Five, promissory estoppel against BP and Mehoopany

Wind Energy; Count Six, tortious interference with contractual relations

against BP and Mehoopany Wind Energy; Count Seven, agency relationship

against BP, Mehoopany Wind Energy, Sempra, RES and Wondra; Count

Eight, unjust enrichment against BP, Mehoopany Wind Energy, Sempra, RES

and Wondra; Count Nine, Pennsylvania's Contractor and Subcontractor

Payment Act claim against Wondra; Count Ten, Pennsylvania's Contractor

and Subcontractor Payment Act claim against RES; and Count Eleven,

breach of contract against Zurich and Fidelity.

The defendants now move to dismiss all claims pursuant to Federal

Rule of Civil Procedure 12(b)(6).  (Docs. 56, 58 & 62).  Additionally, BP,

Mehoopany Wind Energy and Sempra move to strike Count Six, tortious interference with a contract and Count Seven, agency relationship from plaintiff's amended complaint.  (Doc. 54).  RES also moves to strike Count Seven from plaintiff's amended complaint.  (Doc. 59).  The parties then briefed the issues bringing the case to its present posture.

## Jurisdiction

The court has jurisdiction pursuant to the diversity statute, 28 U.S.C. § 1332.[2]  Because complete diversity of citizenship exists between the parties and the amount in controversy exceeds $75,000, the court has jurisdiction

---

[2] Plaintiff Bill Goodwin Construction, LLC is incorporated under the laws of the Commonwealth of Pennsylvania with its principal place of business in Pennsylvania.  (Doc. 48, Am. Compl. ¶ 1).  Defendant Wondra is incorporated under the laws of the State of Wisconsin with its principal place of business in Wisconsin.  (Id. ¶ 2).  Defendant RES is incorporated under the laws of the State of Delaware with its principal place of business in Colorado.  (Id. ¶ 4).  Defendant Mehoopany Wind Energy, LLC is a limited liability company organized and existing under the laws of Delaware, with two members: Defendants BP and Sempra U.S. Gas & Power.  (Doc. 1, Notice of Removal ¶ 19).  Defendant BP is incorporated under the laws of the State of Delaware with its principal place of business in Texas.  (Am. Compl. ¶ 3).  Defendant Sempra U.S. Gas & Power ("Sempra") is a limited liability company organized and existing under the laws of Delaware, with one member: Sempra Global.  (Doc. 1, Notice of Removal ¶¶ 19, 21).  Sempra Global is incorporated under the laws of the State of Delaware with its principal place of business in California.  (Id.)  Defendant Zurich American Insurance Company ("Zurich") is incorporated under the laws of the State of New York with its principal place of business in Illinois.  (Id. ¶ 22).  Defendant Fidelity & Deposit Company of Maryland ("Fidelity") is incorporated under the laws of the State of Maryland with its principal place of business in Illinois.  (Id. ¶ 23).

over this case.  See 28 U.S.C. § 1332 ("district courts shall have original

jurisdiction of all civil actions where the matter in controversy exceeds the

sum or value of $75,000, exclusive of interest and costs, and is between . . .

citizens of different States[.]"); 28 U.S.C. § 1441 (A defendant can generally

remove a state court civil action to federal court if the federal court would

have had original jurisdiction to address the matter pursuant to the diversity

jurisdiction statute).  As a federal court sitting in diversity, the substantive law

of Pennsylvania shall apply to the instant case.  Chamberlain v. Giampapa,

210 F.3d 154, 158 (3d Cir. 2000) (citing Erie R.R. v. Tompkins, 304 U.S. 64,

78 (1938)).

**Standard of Review**

Defendants filed their motions to dismiss plaintiff's amended complaint

pursuant to Federal Rule of Civil Procedure 12(b)(6).  The court tests the

sufficiency of the complaint's allegations when considering a Rule 12(b)(6)

motion.  All well-pleaded allegations of the complaint must be viewed as true

and in the light most favorable to the non-movant to determine whether,

"'under any reasonable reading of the pleadings, the plaintiff may be entitled

to relief.'"  Colburn v. Upper Darby Twp., 838 F.2d 663, 665-66 (3d Cir. 1988)

(quoting Estate of Bailey by Oare v. Cnty. of York, 768 F.2d 503, 506 (3d Cir.

1985)).  The plaintiff must describe "'enough facts to raise a reasonable

expectation that discovery will reveal evidence of' [each] necessary element"

of the claims alleged in the complaint.  Phillips v. Cnty. of Allegheny, 515 F.3d

224, 234 (3d Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556

(2007)).  Moreover, the plaintiff must allege facts that "justify moving the case

beyond the pleadings to the next stage of litigation."  Id. at 234-35.  In

evaluating the sufficiency of a complaint the court may also consider "matters

of public record, orders, exhibits attached to the complaint and items

appearing in the record of the case."  Oshiver v. Levin, Fishbein, Sedran &

Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994) (citations omitted).  The court

does not have to accept legal conclusions or unwarranted factual inferences.

See Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc., 450 F.3d 130,

133 (3d Cir. 2006) (citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902,

906 (3d Cir. 1997)).

## Discussion

   BP, Sempra, Mehoopany Wind Energy, Wondra and RES have filed

three motions to dismiss plaintiff's amended complaint.  (Docs. 56, 58 & 62).

Collectively, they seek to dismiss all of plaintiff's claims.[3]  Additionally, BP,

---

   [3]  Plaintiff asserts several claims against the following defendants: (1)
BP, Sempra and Mehoopany Wind Energy are sued for promissory estoppel,

Sempra, Mehoopany Wind Energy and RES have filed motions to strike

plaintiff's claims for tortious interference with contract and agency

relationship.  (Docs. 54, 59).  Therefore, the court will first address the

individual motions to dismiss, and if necessary, address the motions to strike.

## I. BP, Sempra and Mehoopany Wind motion to dismiss

Plaintiff's amended complaint asserts four claims against BP, Sempra

and Mehoopany Wind Energy: (1) Promissory Estoppel; (2) Tortious

Interference with a Contract; (3) Agency Relationship; and (4) Unjust

Enrichment.  BP, Sempra and Mehoopany Wind Energy challenge plaintiff's

claims on two grounds.  First, BP and Sempra argue that they are not co-

owners of the project.  Rather, BP and Sempra are members of Mehoopany

Wind Energy–a limited liability company (hereinafter "LLC") and Mehoopany

Wind Energy, LLC owns the project.  Because Pennsylvania law states that

members of an LLC cannot be sued on the basis of vicarious liability for the

torts or contracts of an LLC, they are not liable.  Second, these defendants

_____

tortious interference with a contract, agency relationship, and unjust
enrichment; (2) Wondra is sued for breach of contract, promissory estoppel,
Pennsylvania's Contractor and Subcontractor Payment Act, unjust enrichment
and agency relationship; and (3) RES is sued for breach of contract,
promissory estoppel, Pennsylvania's Contractor and Subcontractor Payment
Act, unjust enrichment and agency relationship.

contend that plaintiff's amended complaint fails to state claims upon which relief can be granted.  The court addresses each issue in turn.

### A. BP and Sempra motion to dismiss

BP and Sempra contend that they should be dismissed because they are **members** of Mehoopany Wind Energy and are not co-owners of the project.  Plaintiff claims that BP and Sempra's arguments involve issues of fact related to complex and convoluted corporate structures, which are not appropriate for a motion to dismiss.  After careful consideration, the court agrees with BP and Sempra.

Pennsylvania law states that members of an LLC cannot be sued on the basis of vicarious liability for the torts or contracts of the LLC.  See Freer v. Allied Servs., No. 3:11-CV-281, 2011 WL 5374445, at *3 (M.D. Pa. Nov. 7, 2011) (citing 15 PA. CONS. STAT. ANN. § 8991(b)).  In support of their contention that they are members of an LLC, BP and Sempra submit Pennsylvania approval permits, which illustrate that Mehoopany Wind Energy is the project owner.[4]  (See Doc. 75, Ex. A, Pa. Unif. Constr. Code Approval

---

[4]  The court takes judicial notice of these exhibits as matters of public record.  See Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994) (citations omitted) (stating that in evaluating the sufficiency of a complaint, the court may consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case.).

dated Dec. 24, 2012; Doc. 75, Ex. B, Pa. Dep't of Transp. Permit dated Dec. 9, 2011; Doc. 75, Ex. C, Pa. Dep't of Envtl. Prot. Permit dated May 16, 2013). Moreover, BP and Sempra submit a document from the Federal Energy Regulator Commission, which confirms that BP and Sempra are owners of Mehoopany Wind Holdings, LLC–the single member of Mehoopany Wind Energy.[5]  (Doc. 75, Ex. D, U.S. Fed. Energy Regulatory Comm'n Order dated Oct. 4, 2012 ¶¶ 1-5).  Because Pennsylvania law precludes the imposition of individual liability upon members of an LLC, Mehoopany Wind Holdings, LLC cannot be liable, which in turn establishes that its parent companies, BP and Sempra, also cannot be liable.  Accordingly, the court will grant BP and Sempra's motion to dismiss to the extent that BP and Sempra will be

---

[5]  An illustration of the corporate structure is as follows:

dismissed from this action.

## B.  Mehoopany Wind Energy motion to dismiss

Having dismissed BP and Sempra, the court next addresses plaintiff's four claims against Mehoopany Wind Energy.  These claims are: (1) Promissory Estoppel; (2) Tortious Interference with a Contract; (3) Agency Relationship; and (4) Unjust Enrichment.  Mehoopany Wind Energy contends that plaintiff's claims fail to state a claim upon which relief can be granted.  The court addresses these claims *in seriatim*.

## 1.  Promissory estoppel

Plaintiff brings a promissory estoppel claim against Mehoopany Wind Energy.  Under Pennsylvania law, promissory estoppel is defined as:

> [a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.

Thatcher's Drug Store of W. Goshen, Inc. v. Consol. Supermarkets, Inc., 636 A.2d 156, 160 (Pa. 1994) (quoting RESTATEMENT (SECOND) CONTRACTS § 90(1)).  Stated differently, plaintiff must establish that: 1) Mehoopany Wind Energy made a promise that it should have reasonably expected to induce action on the part of the plaintiff; 2) plaintiff actually took action in reliance on

the promise; and 3) injustice can be avoided only by enforcing Mehoopany

Wind Energy's promise. <u>Williams v. Standard Fire Ins. Co.</u>, 892 F. Supp. 2d

608, 613 (citing <u>Crouse v. Cyclops Indus.</u>, 745 A.2d 606, 610 (Pa. 2000)).

In the instant case, plaintiff avers that Michael Kelly, BP's Safety

Engineer, promised plaintiff that it would be paid by the ton as well as by the

hour for its work on the project.  Pursuant to this promise, plaintiff modified

the payment arrangements it had with its own subcontractors resulting in

significant expense to the plaintiff.  Mehoopany Wind Energy contends that

plaintiff failed to allege a promise, which caused plaintiff to substantially

change its position.  After careful consideration, the court agrees with the

plaintiff.

Plaintiff has adequately alleged a promise.  Plaintiff avers that during

November 2011, plaintiff met with representatives of BP and Wondra.  (Am.

Compl. ¶ 18).  At this meeting, Michael Kelly, BP's Safety Engineer,

discovered that Wondra was only paying plaintiff by the ton.  (<u>Id.</u>)  Plaintiff

claims that Kelly demanded plaintiff and all other delivery trucks be **paid by

the hour** in addition to material by the ton.  (<u>Id.</u> ¶¶ 19, 21) (emphasis added).

Specifically, Kelly stated that "if this condition was not met, plaintiff and the

other delivery trucks would not be able to haul on the job."  (<u>Id.</u> ¶ 20).

14

Evidently, Kelly was concerned that if the haulers were only paid by the ton the haulers would have an incentive to travel as quickly as possible between hauls, which could create safety hazards.  (Id. ¶ 22).  Viewing plaintiff's allegations as true, the court finds that plaintiff has properly pled a promise, which serves as the foundation for its promissory estoppel claim.

Additionally, plaintiff relied on Kelly's promise to its detriment because plaintiff substantially changed its position regarding the payment terms with its own subcontractors.  Specifically, plaintiff agreed to pay its own subcontractors by the hour in addition to material by the ton.  (Id. ¶¶ 24-28).  Plaintiff undertook this modification to its financial detriment because "it was more expensive for [p]laintiff to pay its sub-contractors at an hourly rate . . . ." (Id. ¶ 29).  As such, plaintiff has alleged sufficient facts to establish a *prima facie* case of promissory estoppel against Mehoopany Wind Energy.

### 2.  Tortious interference with a contract

Plaintiff next asserts a tortious interference with contractual relations claim against Mehoopany Wind Energy pursuant to section 766A of the Restatement (Second) of Torts.[6]  Pennsylvania Courts, however, have not

---

[6]Section 766A states:

> One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between

15

adopted this section and the Third Circuit Court of Appeals has put its validity

into serious doubt.  Specifically, the Third Circuit "has suggested–without

deciding–that the Pennsylvania Supreme Court is unlikely to adopt section

766A." KDH Elec. Sys., Inc. v. Curtis Tech. Ltd., 826 F. Supp. 2d 782, 805

(E.D. Pa. 2011) (citing Windsor Sec., Inc. v. Hartford Life Ins. Co., 986 F.2d

655, 659-63 (3d Cir. 1993).  The Third Circuit Court of Appeals has reaffirmed

this prediction in a subsequent case. See Gemini Physical Therapy &

Rehab., Inc. v. State Farm Mut. Auto. Ins. Co., 40 F.3d 63, 66 (3d Cir. 1994)

(reasoning that causing the performance of a contract to be more costly for

the plaintiff is "too speculative and subject to abuse to provide a meaningful

basis for a cause of action.").

Because the Pennsylvania Supreme Court has not ruled to the contrary,

the court will follow the Third Circuit Court of Appeals in finding that plaintiff

has not stated a cognizable claim under Pennsylvania law against

Mehoopany Wind Energy.  Accordingly, Mehoopany Wind Energy's motion to

---

another and a third person, by preventing the other from
performing the contract or causing his performance to be more
expensive or burdensome, is subject to liability to the other for
the pecuniary loss resulting to him.

RESTATEMENT (SECOND) OF TORTS § 766A.

dismiss plaintiff tortious interference with a contract claim will be granted.[7]

### 3. Agency relationship

Mehoopany Wind Energy moves to dismiss plaintiff's "agency relationship" claim because it is not a recognized cause of action under Pennsylvania law.  Rather, an agency relationship can only be used to attribute liability under separate, recognized causes of action.  Plaintiff argues that agency relationship is a viable cause of action under Pennsylvania law.

Specifically, plaintiff claims that a court within the Middle District of Pennsylvania has recognized a claim for agency.  See Doe v. Ensey, 220 F.R.D. 422 (M.D. Pa. 2004).  We disagree with plaintiff's interpretation of Doe.  In Doe, Judge John E. Jones addressed a motion to compel discovery and merely recited the counts alleged in plaintiff's complaint in the procedural history section.  Id. at 423-24.  Judge Jones never acknowledged that this cause of action could form the basis for liability.  Id. at 424-25.  Indeed, our research has failed to discover any case, which supports plaintiff's proposition that Pennsylvania recognizes a claim for agency relationship.  As a result, Mehoopany Wind Energy's motion to dismiss plaintiff's agency relationship

---

[7] The court will dismiss this claim with prejudice as an amendment would be futile.  See Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004) (holding that district courts must permit a curative amendment within a set period of time unless such an amendment would be inequitable or futile).

claim will be granted.[8]

### 4. Unjust enrichment

Finally, Mehoopany Wind Energy moves to dismiss plaintiff's unjust enrichment claim.  Pennsylvania courts have held that "[u]njust enrichment is essentially an equitable doctrine."  Styer v. Hugo, 619 A.2d 347, 350 (Pa. Super. Ct. 1993).  A plaintiff alleging unjust enrichment must establish the following elements: "(1) a benefit conferred on the defendant by the plaintiff; (2) appreciation of the benefit by the defendant; and (3) the defendant's acceptance and retention of the benefit 'under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value.'"  Giordano v. Claudio, 714 F. Supp. 2d 508, 530 (E.D. Pa. 2010) (quoting Filippi v. City of Erie, 968 A.2d 239, 242 (Pa. Commw. Ct. 2009)). Under these circumstances, "the law implies a contract between the parties pursuant to which the plaintiff must be compensated for the benefits unjustly received by the defendant."  Styer, 619 A.2d at 350.  The existence of such a contract "requires that the defendant pay the plaintiff the value of the benefits conferred . . . ."  Id.

---

[8]  The court will dismiss this claim with prejudice as an amendment would be futile.  See Alston, 363 F.3d at 235 (holding that district courts must permit a curative amendment within a set period of time unless such an amendment would be inequitable or futile).

Mehoopany Wind Energy argues that plaintiff failed to allege sufficient facts regarding how the retention of benefits related to the project would be inequitable or unjust.  Plaintiff avers that the modification of its contract price to comport with Mehoopany Wind Energy's desire to improve safety on the job, in addition to providing materials and labor for the project's construction, demonstrate that it conferred a benefit upon Mehoopany Wind Energy, which would be inequitable or unjust absent compensation.  The court agrees with the plaintiff.

Plaintiff has pled that, over the course of its work on the project, it performed services and received instruction from Mehoopany Wind Energy, RES and Wondra.  (See Am. Compl. ¶¶ 48-61).  Plaintiff pled that these services were accepted and benefitted Mehoopany Wind Energy, RES and Wondra.  (Id. ¶¶ 123-25).  Given these facts, the reasonable inference that defendants are liable to plaintiff under the equitable theory of unjust enrichment can be drawn; thus satisfying federal pleading standards.  Ergo, the court will decline to dismiss plaintiff's unjust enrichment claim at such an early stage in the proceeding.

## II.  Wondra motion to dismiss

Wondra moves to dismiss plaintiff's amended complaint on the following

five grounds.  First, plaintiff's breach of contract claim should be dismissed

because plaintiff has failed to plead the terms of the alleged oral agreement.

Second, plaintiff has failed to sufficiently allege a promise, which requires

dismissal of plaintiff's promissory estoppel claim.  Third, plaintiff's "agency

relationship" claims fails because Pennsylvania does not recognize agency

relationship as a cause of action.  Fourth, Pennsylvania law precludes plaintiff

from pleading unjust enrichment as an alternative to plaintiff's breach of

contract claim.  Fifth, plaintiff's Contractor and Subcontractor Payment Act

claim should be dismissed because plaintiff failed to allege the existence of

an enforceable contract.  The court will address Wondra's arguments *in
seriatim*.

## A.  Breach of contract

Wondra moves to dismiss plaintiff's breach of contract claim alleging

plaintiff failed to plead the terms of the alleged oral agreement and oral

modification with sufficient clarity.  Additionally, Wondra argues that the oral

modification lacked consideration.  Plaintiff avers that it has properly pled a

breach of contract claim for both the original oral agreement and oral

modification.  The court agrees with the plaintiff.

Under Pennsylvania law, parties asserting claims for breach of contract

must allege the following three elements to adequately state a claim: "(1) the

existence of a contract, including its essential terms; (2) a breach of duty

imposed by the contract; and (3) resultant damages." Alpart v. Gen. Land

Partners, Inc., 574 F. Supp. 2d 491, 502 (E.D. Pa. 2008) (citing CoreStates

Bank, N.A. v. Cutillo, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999)); see also

Mavrinac v. Emergency Med. Ass'n of Pittsburgh, No. 2:04-cv-1880, 2005 WL

2304995, at *8 (W.D. Pa. Sept. 21, 2005) (noting that to plead a breach of

contract, "a plaintiff must assert the existence of a valid and binding contract;

that the plaintiff has complied with [the] contract by performing her own

obligations under it; [that] all conditions precedent were fulfilled; [that] there

was a breach of the contract; and [that] damages were incurred" (citing Pierce

v. Montgomery Cnty. Opportunity Bd., Inc., 884 F. Supp. 965, 970 (E.D. Pa.

1995))).  Although every term of a contract need not be stated in complete

detail, every element must be specifically pleaded.   Cutillo, 723 A.2d at 1058.

Clarity in the pleadings is "particularly important where an oral contract is

alleged." Pa. Supply, Inc. v. Am. Ash Recycling Corp., 895 A.2d 595, 600

(Pa. Super. Ct. 2006) (citations omitted).

In the instant case, plaintiff and Wondra entered into and oral

agreement in November 2011.  (Am. Compl. ¶ 14).  This oral agreement

21

required plaintiff to deliver stone and other material in addition to providing

equipment and services for the construction of roadways for the project.  (Id.

¶¶ 14-15).  Subsequent to this agreement, plaintiff hired its own

subcontractors to assist in the delivery of stone and other material.  (Id. ¶ 15).

    Under the terms of this oral agreement, Wondra agreed to pay plaintiff

ten dollars and fifty cents ($10.50) for each ton of material delivered.  (Id. ¶

16).  Plaintiff avers that this tonnage price covered the actual cost of material,

valued at five dollars and fifty cents ($5.50) a ton, and the hauling/delivery

costs of five dollars ($5.00) per ton.  (Id. ¶ 17).  This oral agreement **did not**

include the hourly truck time for the use of plaintiff's trucks.

    During the first month of the oral agreement, plaintiff met with

representatives of BP, Mehoopany Wind Energy and Wondra.  (Id. ¶ 18).  At

this meeting, Michael Kelly, BP Safety Engineer, discovered that Wondra was

only paying plaintiff by the ton.  (Id.)  Plaintiff claims that Kelly, on behalf of

BP, demanded that plaintiff and all other delivery trucks be **paid by the hour**

in addition to material by the ton.  (Id. ¶¶ 19, 21) (emphasis added).

Specifically, Kelly stated that "if this condition was not met, plaintiff and the

other delivery trucks would not be able to haul on the job."  (Id. ¶ 20).

Evidently, Kelly was concerned that the haulers would have an incentive to

22

travel as quickly as possible between hauls, which could create safety hazards, if the haulers were only paid by the ton.  (Id. ¶ 22).  Additionally, Kelly demanded this change to comply with BP and Mehoopany Wind Energy's internal procedures.  (Id. ¶ 23).

Subsequent to this meeting, plaintiff and Wondra agreed to modify their initial oral agreement.  (Id. ¶ 24).  Wondra agreed to pay plaintiff by the ton **as well as by the hour** so as to ensure the continued safety of all parties involved in the project.  (Id. ¶ 25) (emphasis added).  In exchange for slower and safer hauling, Wondra agreed and promised that it would pay plaintiff five dollars ($5.00) to seven dollars ($7.00) per ton and seventy-five dollars ($75.00) to ninety dollars ($90.00) an hour for truck time.  (Id. ¶¶ 25-26).

Plaintiff, in turn, modified the payment arrangements with its subcontractors.  Specifically, plaintiff made arrangements to pay its own subcontractors an hourly rate between seventy-five dollars ($75.00) and ninety dollars ($90.00).  (Id. ¶ 28).  Plaintiff made it clear, however, that the subcontractors would no longer receive a tonnage rate in addition to truck time.  (Id.)  Plaintiff alleges that it was more expensive to pay its subcontractors at an hourly rate than it was to pay by the ton as originally agreed.  (Id. ¶ 29).

Plaintiff performed its duties pursuant to the oral agreement and oral modification and submitted invoices to Wondra in June and July 2012. (Id. ¶¶ 30-31). Plaintiff alleges Wondra failed to remit full and complete payment even though RES and/or BP, Mehoopany Wind Energy and Sempra paid Wondra. (Id. ¶¶ 34, 36). Plaintiff claims the unpaid invoices amount to $1,911,382.91. (Id. ¶ 35).

Viewing plaintiff's allegations as true, the court will find that plaintiff has properly pled a breach of contract claim for both the original oral agreement and oral modification against Wondra. Plaintiff's amended complaint sets forth "sufficient factual matter" establishing the existence of an oral agreement and oral modification. See Iqbal, 556 U.S. at 677. As such, the court will deny Wondra's motion to dismiss plaintiff's breach of contract claim.

**B. Promissory estoppel**

Wondra next moves to dismiss plaintiff's promissory estoppel claim contending that plaintiff has failed to sufficiently allege a promise. Because Wondra's promissory estoppel arguments are almost identical to their breach of contract contentions, the analysis given above is equally applicable here. Ergo, the court will deny Wondra's motion to dismiss plaintiff's promissory estoppel claim.

### C.  Agency relationship

Wondra moves to dismiss plaintiff's "agency relationship" claim because it is not a recognized cause of action under Pennsylvania law.  Rather, an agency relationship can only be used to attribute liability under separate, recognized causes of action.  Plaintiff argues that agency relationship is a viable cause of action under Pennsylvania law.  The court will grant Wondra's motion to dismiss this claim for the same reasons set forth in section I.B.3. *supra*.[9]

### D.  Unjust enrichment

Wondra also moves to dismiss plaintiff's unjust enrichment claim.  Wondra argues that Pennsylvania law precludes plaintiff from pleading unjust enrichment as an alternative to plaintiff's breach of contract claim.  Plaintiff claims that Pennsylvania law allows an unjust enrichment claim to be pled in the alternative to a breach of contact claim.  The court agrees with plaintiff.

Courts in Pennsylvania have continually recognized that a litigant may advance alternative or conflicting theories of recovery, including causes of action for breach of contract and unjust enrichment.  See Lugo v. Farmers

_____

[9]  The court will dismiss this claim with prejudice as an amendment would be futile.  See Alston, 363 F.3d at 235 (holding that district courts must permit a curative amendment within a set period of time unless such an amendment would be inequitable or futile)

Pride, Inc., 967 A.2d 963, 970 n.5 (Pa. Super. Ct. 2009) (stating that unjust

enrichment may be pleaded in the alternative to a breach of contract claim);

see also Halstead v. Motorcycle Safety Found., Inc., 71 F. Supp. 2d 455, 459

(E.D. Pa. 1999) (finding that while Pennsylvania law precludes recovery on an

unjust enrichment claim when a valid contract exists, plaintiffs are free to

pursue alternative theories of recovery).  Moreover, the Federal Rules of Civil

Procedure allow for the pleading of alternative theories in the same complaint,

even if those theories are inconsistent.  See FED. R. CIV. P. 8(d) (stating that

"[a] party may state as many separate claims . . . regardless of consistency.");

see also Reynolds v. Univ. of Pa., 747 F. Supp. 2d 522, 541-42 (E.D. Pa.

2010) (noting that the contract must be found to be enforceable for an unjust

enrichment claim to be excluded).  Accordingly, the court will find that plaintiff

is not foreclosed from pleading alternative causes of action sounding in

breach of contract and unjust enrichment.  Wondra's motion to dismiss

plaintiff's unjust enrichment claim will, therefore, be denied.

### E.  Pennsylvania Contractor and Subcontractor Payment Act

Finally, Wondra seeks the dismissal of plaintiff's claim pursuant to

Pennsylvania's Contractor and Subcontractor Payment Act (hereinafter

"CASPA").  73 PA. STAT. ANN. §§ 501 et seq.  Under CASPA, "[p]erformance

by a contractor or a subcontractor in accordance with **the provisions of a contract** shall entitle the contractor or subcontractor to payment from the party with whom the contractor or subcontractor has contracted." Id. at § 504 (emphasis added). A "construction contract" is "[a]n agreement, whether written or oral, to perform work on any real property located within this Commonwealth." Id. at § 502. "Real property" is defined as "[r]eal estate that is improved, including lands, leaseholds, tenements and hereditaments, and improvements placed thereon." Id. Subcontractors are only entitled to payment from "the party with whom the subcontractor has contracted." Id. at § 507(a).

In the instant case, the court has previously determined that plaintiff has sufficiently alleged the existence of an oral contract and oral modification between plaintiff and Wondra. Because the existence of a contract gives rise to liability under CASPA, the court will deny Wondra's motion to dismiss plaintiff's CASPA claim.

**III. RES motion to dismiss**

RES moves to dismiss plaintiff's amended complaint on the following five grounds: First, plaintiff's breach of contract claim should be dismissed because plaintiff has failed to plead the essential terms of the oral agreement.

Second, plaintiff has failed to allege that RES ever made a promise, which requires dismissal of plaintiff's promissory estoppel claim.  Third, plaintiff's "agency relationship" claims fails because an agency relationship is not a viable cause of action under Pennsylvania law.  Fourth, plaintiff's claim for unjust enrichment fails because plaintiff, as a subcontractor, cannot recover against RES, a third party, absent some contractual agreement with or misleading by RES.  Fifth, plaintiff's Contractor and Subcontractor Payment Act claim should be dismissed because plaintiff failed to allege the existence of an enforceable contract with RES.  The court will address RES's contentions in turn.

### A.  Breach of contract

RES first moves to dismiss plaintiff's breach of contract claim.  RES contends that plaintiff has failed to plead the essential terms of the offer, acceptance and consideration of the alleged oral agreement.  Plaintiff avers that it has properly pled a breach of contract claim against RES.  After careful consideration, the court agrees with plaintiff.

As previously stated, parties asserting claims for breach of contract must allege the following three elements to adequately state a claim pursuant to Pennsylvania law: "(1) the existence of a contract, including its essential

terms; (2) a breach of duty imposed by the contract; and (3) resultant damages." Alpart, 574 F. Supp. 2d at 502 (citing CoreStates Bank, N.A., 723 A.2d at 1058). Although every term of a contract need not be stated in complete detail, every element must be specifically pleaded. Cutillo, 723 A.2d at 1058. Clarity in the pleadings is "particularly important where an oral contract is alleged." Pa. Supply, Inc., 895 A.2d at 600 (citations omitted).

In the instant action, plaintiff claims that it entered into a separate and distinct oral agreement with RES in June 2012. (Am. Compl. ¶ 37). Specifically, RES agreed and promised to pay plaintiff to provide both the necessary stone material and deliver this material for the completion of the roadways within the project. (Id. ¶¶ 37-38). This stone material was in addition to and separate from the work and materials plaintiff was to provide pursuant to plaintiff's oral agreement and oral modification with Wondra. (Id. ¶ 40).

RES agreed to pay plaintiff ten dollars and fifty cents ($10.50) for each ton of stone material delivered and plaintiff's drivers eighty dollars ($80.00) an hour for any downtime experienced while on the project site. (Id. ¶ 37). Plaintiff provided $115,705.63 in materials and services for the project at the direction and request of RES. (Id. ¶ 41). RES accepted plaintiff's materials

and services.  (Id. ¶ 42).  BP, Mehoopany Wind Energy and Sempra have

paid RES for work related to the project.  (Id. ¶ 46).  RES, however, has

refused to pay plaintiff.  (Id. ¶¶ 43-44).

Viewing plaintiff's allegations as true, the court will find that plaintiff has

properly pled the existence of a contract with RES.  Plaintiff states the oral

agreement's terms, nature of acceptance and the consideration exchanged.

Additionally, plaintiff sufficiently alleges that RES breached this oral

agreement by refusing to pay plaintiff.  In short, plaintiff's amended complaint

sets forth "sufficient factual matter" establishing the existence of an oral

agreement with RES.  See Iqbal, 556 U.S. at 677.  As such, the court will

deny RES's motion to dismiss plaintiff's breach of contract claim.[10]

**B.  Promissory estoppel**

RES next moves to dismiss plaintiff's promissory estoppel claim

contending that plaintiff has failed to sufficiently allege a promise.  Because

RES's promissory estoppel arguments are almost identical to their breach of

_____

[10] RES also asserts that a party not named in the present action, RES
Earth and Cable, LLC ("REC") was the project's general contractor and not
RES.  The court notes that our assessment rests heavily on the procedural
posture of this litigation.  Plaintiff has had no opportunity for discovery as to
RES's ownership structures.  It may well be that a fully developed factual
record will preclude a finding that RES is liable.  Under these circumstances,
however, the court cannot say that plaintiff's amended complaint fails to state
a claim upon which relief can be granted.

contract contentions, the analysis given above is equally applicable here.

Ergo, the court will deny Wondra's motion to dismiss plaintiff's promissory

estoppel claim.

### C.  Agency relationship

RES moves to dismiss plaintiff's "agency relationship" claim because an

agency relationship is not a viable cause of action under Pennsylvania law.

Rather, an agency relationship can only be used to attribute liability under

separate, recognized causes of action.  The court will grant RES's motion to

dismiss this claim for the same reasons set forth in section I.B.3. *supra*.[11]

### D.  Unjust Enrichment

RES next moves to dismiss plaintiff's unjust enrichment claim.

Pennsylvania courts have held that "[u]njust enrichment is essentially an

equitable doctrine."  <u>Styer</u>, 619 A.2d at 350.  A plaintiff alleging unjust

enrichment must establish the following elements: "(1) a benefit conferred on

the defendant by the plaintiff; (2) appreciation of the benefit by the defendant;

and (3) the defendant's acceptance and retention of the benefit 'under such

circumstances that it would be inequitable for defendant to retain the benefit

---

[11]  The court will dismiss this claim with prejudice as an amendment
would be futile.  <u>See</u> <u>Alston</u>, 363 F.3d at 235 (holding that district courts must
permit a curative amendment within a set period of time unless such an
amendment would be inequitable or futile)

without payment of value.'" <u>Giordano</u>, 714 F. Supp. 2d at 530 (quoting <u>Filippi</u>, 968 A.2d at 242).  Under these circumstances, "the law implies a contract between the parties pursuant to which the plaintiff must be compensated for the benefits unjustly received by the defendant." <u>Styer</u>, 619 A.2d at 350.  The existence of such a contract "requires that the defendant pay the plaintiff the value of the benefits conferred . . . ." <u>Id.</u>

Here, plaintiff has pled that, over the course of its work on the project, it performed services and received instruction from Mehoopany Wind Energy, RES and Wondra.  (<u>See</u> Am. Compl. ¶¶ 48-61).  Plaintiff pled that these services were accepted and benefitted Mehoopany Wind Energy, RES and Wondra.  (<u>Id.</u> ¶¶ 123-25).   Moreover, at RES's specific request, plaintiff provided $115,705.63 in materials and services to RES.  (<u>Id.</u> ¶¶ 37-41).  RES, however, has not paid plaintiff.  (<u>Id.</u> ¶¶ 45, 126).  Given these facts, the reasonable inference that RES is liable to plaintiff under the equitable theory of unjust enrichment can be drawn; thus satisfying federal pleading standards. Ergo, the court will decline to dismiss plaintiff's unjust enrichment claim at such an early stage in the proceeding.

### E.  Pennsylvania Contractor and Subcontractor Payment Act

Finally, RES seeks the dismissal of plaintiff's Pennsylvania Contractor

and Subcontractor Payment Act (hereinafter "CASPA") claim.  73 PA. STAT. ANN. §§ 501 *et seq*.  Under CASPA, "[p]erformance by a contractor or a subcontractor in accordance with **the provisions of a contract** shall entitle the contractor or subcontractor to payment from the party with whom the contractor or subcontractor has contracted."  Id. at § 504 (emphasis added). A "construction contract" is "[a]n agreement, whether written or oral, to perform work on any real property located within this Commonwealth."  Id. at § 502.  "Real property" is defined as "[r]eal estate that is improved, including lands, leaseholds, tenements and hereditaments, and improvements placed thereon."  Id.  Subcontractors are only entitled to payment from "the party with whom the subcontractor has contracted."  Id. at § 507(a).

In the instant action, the court has previously determined that plaintiff has sufficiently alleged the existence of an oral contract with RES and breach thereof.  Because the existence of a contract gives rise to liability under CASPA, the court will deny RES's motion to dismiss plaintiff's CASPA claim.

**Conclusion**

For the reasons set forth above, the court will dismiss BP and Sempra from this action.  The court will also dismiss Count Six–tortious interference with a contract and Count Seven–agency relationship with prejudice as these

claims are futile under Pennsylvania law.  Because the court will dismiss Counts Six and Seven, the court will deny Mehoopany Wind Energy and RES's motions to strike these claims as moot.

Therefore, the remaining parties and claims are: Count One–breach of contract against Wondra; Count Two–breach of contract against RES; Count Three–promissory estoppel against Wondra; Count Four–promissory estoppel against RES; Count Five–promissory estoppel against Mehoopany Wind Energy; Count Eight–unjust enrichment against Wondra, RES and Mehoopany Wind Energy; Count Nine–CASPA claim against Wondra; Count Ten–CASPA claim against RES; and Count Eleven–breach of contract against Zurich and Fidelity.  An appropriate order follows.

**Date:   4/10/14**                                         **s/ James M. Munley**
                                                          **JUDGE JAMES M. MUNLEY**
                                                          **United States District Court**